IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Gregory D. Brown,                                        Case No. 3:20-CV-02072-JGC

           Plaintiff,

       v.                                                               **ORDER**

Deputy Warden Craig *et al.*,

           Defendants.

This is a prisoner civil rights case under 28 U.S.C. § 1983. Plaintiff Gregory Brown filed this action *pro se* against Deputy Warden James Craig, Correctional Officer Travis Frisch, Correctional Officer Alex Sigler, and Nurse Vicky Davis.

In the Complaint, Plaintiff first alleges that Defendants Craig, Frisch, and Sigler were deliberately indifferent to his serious medical need, in violation of the Eighth Amendment, when they failed to transfer Plaintiff immediately to the medical unit for treatment of an asthma attack.

Second, in a separate incident, Plaintiff alleges that Defendant Davis was deliberately indifferent to his serious medical need, in violation of the Eighth Amendment, when she made Plaintiff wait too long for asthma treatment.

He seeks monetary damages.

### **Background**[1]

Plaintiff Gregory Brown is an inmate incarcerated at the North Central Correctional Complex, a privately operated prison in Marion, Ohio overseen by the Ohio Department of

---

[1] I rely on the submitted evidence and affidavits to assemble the facts. Where there are multiple versions of the same events, I discuss them below, and I construe the version most favorable to

Rehabilitation and Corrections. Plaintiff also suffers from chronic asthma. According to the medical records, prison medical staff were aware of and treated Plaintiff's asthma condition. Medical staff provided care to Plaintiff at regular clinic appointments. (*See* Doc. 10, ¶ 11; Doc. 43-1, pgID 403–04).

Plaintiff also received medications to control his asthma and alleviate asthma symptoms. The medications included a "rescue inhaler," used to counteract sudden breathing difficulty and asthma attacks as well as a second inhaler intended to control symptoms before they began. (Doc. 43-1, pgID 404).

Plaintiff complains of two separate instances where prison staff were deliberately indifferent to his serious medical need.

### 1. April 18, 2019 Request for Medical Treatment

On April 18, 2019, Plaintiff was in the prison "dorm," and Officers Frisch and Sigler were stationed at the officer's desk within the dorm. (*Id.*, pgID 380). At about 10:45 p.m., Plaintiff, approached the officer's desk in his wheelchair.[2] (*Id.*, pgID 333). Plaintiff asked Frisch and Sigler to call the medical unit "because he was having a severe asthma attack while wheezing and struggling to breathe in front of them." (Doc. 10, ¶ 16).

Officer Frisch called the medical unit and spoke to "Nurse Steven." (*Id.* ¶ 17). While on the phone with Nurse Steven, Frisch informed Plaintiff what Nurse Steven was telling him— namely, that she would not see Plaintiff that night to administer a nebulizer breathing treatment

---

the plaintiff. *See Bomar v. City of Pontiac*, 643 F.3d 458, 462 (6th Cir. 2011). I also construe Plaintiff's verified Amended Complaint as an affidavit for the purposes of this Motion. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

[2] According to the medical records, Plaintiff moves around with a wheelchair and sometimes with a walker. (Doc. 43-1, pgID 411).

2

and that Plaintiff should instead use his two inhaler medications. Frisch then hung up the phone. (*Id.* ¶ 19).

Plaintiff asked Frisch and Sigler to call the medical unit again, and "tell Nurse Steven that there was a medical emergency and that [he] needed a breathing treatment because [he] was wheezing really bad and struggling pretty hard to breathe." (*Id.* ¶ 20). The officers refused to do so, telling Plaintiff, with some profanity, to get "out of their faces." (*Id.* ¶ 23). The officers also told Plaintiff that "they wished [Plaintiff] would hurry up and die." (Doc. 43-1, pgID 425).

Deputy Warden Craig, while making his rounds through the facility, entered the dorm about fifteen minutes later at 11:00 p.m. (*Id.*). Plaintiff complained to Craig while Craig was at the officer's desk speaking with Frisch and Sigler. Plaintiff asked Craig to call the medical unit and tell them he was having a severe asthma attack and needed a breathing treatment. Craig declined to call medical, telling Plaintiff "to calm down, stop trying to make himself hyperventilate, [and] to use the [two] inhalers that he has . . . ." Craig, Frisch, and Sigler then walked away from Plaintiff, grinning and laughing at him. (*Id.*).

Plaintiff returned to his bed for the night. Plaintiff alleges that he continued to have head and chest pain for the next two hours. (*Id.*, pgID 380; Doc. 10, ¶ 27).

The following morning, at approximately 8:00 a.m. on April 19, 2019, Plaintiff submitted a first grievance regarding the incident. He grieved that the officers failed to allow him to go to medical for a breathing treatment. The grievance focused on the "rude and somewhat disrespectful conduct" of the officers: (1) that Frisch and Sigler did not provide any other assistance or check on him; (2) that the officers "made comments about wishing [he] would die"; (3) that Craig laughed at him as he was talking to him; (4) that Craig told him he was "over

3

acting and [needed] to calm down"; and (5) that "[t]his type of treatment from staff was very unprofessional and unwarranted." (Doc. 43-1, pgID 380).

Also on April 19, 2019, prison staff offered asthma treatment to Plaintiff, but Plaintiff refused. (*Id.*, pgID 401–02). He said he did not want to see the nurse and would instead wait for his chronic care clinic appointment at the end of the month. (*Id.*). He declined treatment and signed a "release of responsibility" form acknowledging the same. (*Id.*).

Plaintiff submitted a second, largely duplicative grievance on April 22, 2019 about this same incident.[3] In this grievance, Plaintiff added that he told the officers he "was having an asthma attack." (*Id.*, pgID 382).

On April 29, 2019, Plaintiff received asthma treatment at his scheduled chronic clinic appointment. (*Id.*, pgID 403). According to the medical record, Plaintiff reported that he had four asthma attacks in the last month, but the record does not mention the April 18, 2019 occurrence specifically. Plaintiff reported no new symptoms at the appointment. The examining physician assistant noted that Plaintiff was "in no acute distress" and "pleasant." (*Id.*)

The physician assistant also said, however, that Plaintiff had "trace scattered wheezing" and that Plaintiff's asthma was poorly controlled. (*Id.*, pgID 404). He started Plaintiff on a different daily maintenance inhaler medication, continued the rescue inhaler medication, and set a follow-up appointment in four weeks. (*Id.*).

Prison officials subsequently investigated both grievances, interviewing Plaintiff and involved prison personnel. (*See id.*, pgID 380–83). In his verified complaint, Plaintiff stated that

---

[3] The prison began investigating the second grievance, but once prison officials realized it was a repeat grievance that already addressed, they denied and closed the grievance. (Doc. 43-1, pgID 382).

4

the grievance investigator (the healthcare administrator) told him that Nurse Steven said that Officer Frisch never told her there was a medical emergency; he only asked if Plaintiff had his inhalers. (Doc. 10, ¶ 35).

### 2. September 19, 2019 Request for Medical Treatment

On September 19, 2019, at about 10:00 p.m., Plaintiff approached the officer's desk in the prison dorm, complaining about another "severe asthma attack."[4] (Doc. 10, ¶ 38). He told the on-duty officer, "Officer Andrew," that he needed a breathing treatment. Officer Andrew called Defendant Nurse Davis, telling her there was a medical emergency and that Plaintiff was "wheezing really bad and struggling to breathe." (*Id.* ¶ 39).

Nurse Davis responded that she could see Plaintiff in 30 minutes and that he would have to wait to be escorted to medical by a yard officer. (Doc. 43-1, pgID 426; Doc. 40-4, ¶ 4). According to the verified complaint, Officer Andrew "became upset" with that response and immediately called for an emergency medical transport to take Plaintiff to the medical unit. (Doc. 10, ¶¶ 41–42).

Once there, Plaintiff reported that he was wheezing and needed a breathing treatment. (Doc. 43-1, pgID 414). Medical staff measured Plaintiff's lung capacity through a "peak flow" test at 10:20 p.m. (*Id.*, pgID 416). The medical record notes that Plaintiff was coughing but that his lungs sounded clear. (*Id.*, pgID 415–16).

---

[4] Earlier that same morning, Plaintiff received medical treatment during a "sick call" visit for an unrelated medical condition. (Doc. 43-1, pgID 409–11). He went to the medical unit again that afternoon for another sick call regarding a different unrelated medical condition. (*Id.,* pgID 412–13). The medical records from both visits do not show Plaintiff complaining of any problems with his asthma.

5

Plaintiff testified that he had to wait another ten to fifteen minutes while sitting in front of the breathing treatment machine before a different nurse administered the treatment. (*Id.*, pgID 426).

Plaintiff submitted a written grievance regarding this incident the following morning on September 20, 2019. (*Id.*, pgID 384). Plaintiff grieved that Davis delayed his treatment by making him wait to be taken to the medical unit and by making him wait while there. (*Id.*). The investigating healthcare administrator subsequently told Plaintiff that he talked to the staff regarding the incident and told them Plaintiff "should have been seen right away." (Doc. 10, ¶ 45).

In this lawsuit, Plaintiff claims that the Defendants in both incidents were deliberately indifferent to his serious medical need. (*Id.* ¶ 12). He claims that his symptoms were obvious to the Defendants and showed that he had a serious medical emergency for which he needed immediate medical care. (*Id.* ¶¶ 14–15). As a result, Plaintiff says that he suffered severe pain, "severe emotional stress," and "severe fearfulness for his life." (*Id.* ¶ 13).

## **Legal Standard**

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323. The movant need not produce evidence to show this absence; instead, it may discharge its burden by pointing out to me an absence of evidence to support the nonmovant's case. *Id.* at 325.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex, supra,* 477 U.S. at 324.

I accept the nonmovant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But the nonmovant must show that there is sufficient evidence in his favor that would allow a jury to find in his favor. *Anderson, supra*, 477 U.S. at 249.

"If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50 (internal citation omitted). "The mere existence of a scintilla of evidence" in plaintiff's favor is insufficient. *Id.* at 252. My task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 481 (6th Cir. 2020).

## Discussion

All of Plaintiff's claims on which Defendants seek summary judgment are for deliberate indifference to a serious medical need under 42 U.S.C. § 1983. For incarcerated individuals in particular, deliberate indifference to a serious medical need violates the Eighth Amendment's prohibition of cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Deliberate indifference claims have both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

First, the objective component requires proof of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). This means a medical need that has been diagnosed by a physician as requiring treatment or "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 567 (6th Cir. 2020). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

If a plaintiff has received some medical care but claims that care or attention inadequate, he must submit "medical proof that the provided treatment was not an adequate medical treatment of [his] condition or pain." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). This medical proof can take the form of expert medical testimony or "verifying medical evidence" that establishes the detrimental effect of the inadequate treatment. *Id.* at 738.

Second, the subjective component requires proof that the defendant had a sufficiently culpable state of mind when they denied or delayed medical care—"equivalent to criminal recklessness." *Griffith, supra*, 975 F.3d at 568. Proof of only negligence or malpractice is not enough. *Farmer, supra*, 511 U.S. at 835.

Specifically, a plaintiff must show that each defendant "[1] subjectively perceived facts from which to infer substantial risk to the prisoner, [2] that he did in fact draw the inference, and [3] that he then disregarded that risk by failing to take reasonable measures to abate it." *Griffith, supra*, 975 F.3d at 568 (internal quotation marks omitted). "State of mind" evidence may be—and oftentimes exclusively is—circumstantial. *Farmer, supra*, 511 U.S. at 842. "[I]f a risk is well-documented and circumstances suggest that the official has been exposed to information so

8

that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge." *Rhinehart, supra*, 894 F.3d at 738.

An officer is not deliberately indifferent where he asks for and relies on the advice and instruction of medical personnel capable of assessing an inmate's health risk. *Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (citing *McGaw v. Sevier Cnty.*, 715 F. App'x 495, 498–99 (6th Cir. 2017)).

### 1. Deliberate Indifference Claims against Officer Frisch, Officer Sigler, and Deputy Warden Craig

Plaintiff has not shown a genuine issue of material fact regarding his claims against Defendants Frisch, Sigler, and Craig. Plaintiff's claims fail, as a matter of law, to show either the objective or the subjective prong of a deliberate indifference claim.

#### a. The Objective Element

Plaintiff has not offered sufficient proof that he had an objectively serious medical need on April 18, 2019. Plaintiff offers his own statements that he told officers he was having an asthma attack.

Defendants characterize Plaintiff's sworn statements concerning his serious medical need as "self-serving." This is true. But I do not "disregard evidence merely because it serves the interests of the party introducing it." *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010). If this were the case, I would also disregard the Defendants' own affidavits as "self-serving." At the summary judgment stage, I do not make credibility determinations on interest, bias, motive, or otherwise. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Bard v. Brown Cnty., Ohio*, 970 F.3d 738, 759 (6th Cir. 2020)).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson, supra*, 477 U.S. at 255. For this Motion, I accept Plaintiff's

9

statements in his affidavit as true—that he told Defendants Frisch, Sigler, and Craig that he was having an asthma attack and that he was wheezing and struggling to breathe. (Doc. 10, ¶ 16; 43-1, pgID 424).

Plaintiff insisted that the medical treatment he needed at that time to address his symptoms was a "breathing treatment." He believed his two inhalers the prison provided him—the maintenance inhaler and the rescue inhaler—were not working, and he wanted to see medical immediately. (Doc. 43-1, pgID 424). Medical did not come to see Plaintiff that evening, but they did come to offer treatment the following day. Thus, Plaintiff's complaint is not that he was entirely denied medical treatment for his asthma (indeed, he had two inhalers and was seen regularly at the chronic clinic), but that the treatment was delayed.

Claims of denial of medical treatment based on a delay in care are measured by proof of the detrimental effect of that delay. *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). As the Sixth Circuit has noted, this "will often afford the court with the best available evidence on the question of whether the alleged deprivation is sufficiently serious, and whether the inmate is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (internal quotation marks omitted).

In *Napier*, the plaintiff was arrested on a bench warrant and detained in a county jail for about two days before he was released. *Id.* at 741. While there, the plaintiff told jail officials he suffered from complete kidney failure for which he needed to attend regularly scheduled dialysis appointments. *Id.*

He had a dialysis treatment scheduled the day after he was booked into the jail, but the jail officials did not take him to it. *Id.* The plaintiff testified that he asked repeatedly for medical

treatment. In response, jail personnel threatened that they would "chain him to a wall . . . if he did not quit knocking on the glass" and asking for medical care. *Id.*

At the hearing on his criminal charges, the judge granted the plaintiff a furlough so he could attend his dialysis treatment. *Id.* But no friend or relative came to pick the plaintiff up to drive him to the appointment. *Id.* Plaintiff missed that dialysis appointment, and he also missed his next dialysis appointment after he was released from the jail. *Id.*

The Sixth Circuit affirmed summary judgment for the *Napier* defendants. *Id.* at 473. The court relied on the lack of medical evidence showing any detrimental effect from missing the dialysis treatment. *Id.* Instead, the treating medical personnel testified that the missed treatment did not affect plaintiff's health. *Id.* The court also found telling that the plaintiff did not go to the hospital seeking dialysis after he was released from the jail and that plaintiff skipped his next appointment after his release. *Id.*

The *Napier* case is instructive here. Like the *Napier* plaintiff, Plaintiff here also complained to officials that he needed to receive a certain medical treatment. But prison officials delayed, and medical personnel did not come to see Plaintiff until the following day.

Plaintiff refused treatment of his asthma and signed a "release of responsibility" acknowledging that fact. Thus, there is no "verifying medical evidence" to which Plaintiff can point and on which I can rely. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004).[5] In fact, like *Napier*, Plaintiff's refusal to seek medical treatment mere hours after first

---

[5] *Blackmore* held that verifying medical evidence is not required where the medical need is "obvious." *Blackmore, supra*, 390 F.3d at 899. The "obvious" need in *Blackmore* is distinguishable from the self-report of an asthma attack here. In *Blackmore*, the acute appendicitis at issue there was not "a long-term and well monitored illness" like Plaintiff's asthma. *Id.* Also, the *Blackmore* plaintiff suffered for two days, vomiting and complaining orally and in writing before receiving medical treatment. *Id.* Plaintiff here refused treatment when it was offered hours later. *See also Martin v. Warren Cnty., Ky.*, 799 F. App'x 329, 338 (6th Cir.

requesting it shows that Plaintiff's medical need was not "sufficiently serious." *Napier, supra*, 238 F.3d 743.

Instead of accepting medical treatment, Plaintiff submitted a grievance report early the next morning. But even in that grievance report, submitted hours after the incident, Plaintiff does not mention an asthma attack. Instead, Plaintiff focused his grievance on the "rude" comments and "unprofessional" behavior of the Defendants. (Doc. 43-1, pgID 380).

Plaintiff was even seen at his regularly scheduled chronic care appointment for his asthma eleven days later on April 29, 2019. (Doc. 43-1, pgID 403). Plaintiff reported that he had four asthma attacks in the last month, but the record does not show any complaints about April 18, 2019. (*Id.*); *see also Bates v. Sullivan*, 6 F. App'x 425, 428 (7th Cir. 2001) ("The medical records [plaintiff] submitted make no reference to the January 1 incident, and [plaintiff] alleged only that he was suffering breathing problems when he requested his inhaler and that he suffered shortness of breath and headaches from the incident. These symptoms are not serious enough to implicate the Eighth Amendment.").

The medical record only states that Plaintiff reported no new symptoms and that he was in no acute distress. (*Id.*, pgID 404). Prison medical personnel then changed Plaintiff's maintenance inhaler prescription, in an apparent attempt to help Plaintiff better control his asthma. (*Id.*).

There is no evidence in the record of an asthma attack other than Plaintiff's report that he was "having a severe asthma attack." This "scintilla of evidence" in Plaintiff's favor cannot carry the entire case on its back. *See Anderson, supra*, 477 U.S. at 250. Proof of an Eighth Amendment

---

2020) (distinguishing *Blackmore* because plaintiff received regular treatment and only contested a delay in medication administration).

violation requires more than an inmate's own characterization of his symptoms and his own idea of what medical treatment he requires and when. Every inmate complaint and every demand for a particular medical treatment cannot, by itself, create a jury issue. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

### b. The Subjective Element

Plaintiff also has not shown that Defendants Frisch, Sigler, Craig had a sufficiently culpable state of mind when they did not take Plaintiff to the medical unit for a breathing treatment. *See Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 568 (6th Cir. 2020).

Even assuming that Plaintiff had a serious medical need and that Defendants perceived and inferred this substantial risk to Plaintiff, they still took reasonable measures in light of the risk. *See id.*

Plaintiff told Defendants Frisch, Sigler, and Craig that he was having an asthma attack and needed a breathing treatment from the medical unit. Defendants did not ignore this request. Instead, Frisch called Nurse Steven in the medical unit and "relayed all the concerns that [Plaintiff] complained of." (Doc. 40-3, ¶ 6).[6] Frisch was then advised by Nurse Steven that Plaintiff was not scheduled for a breathing treatment and that he should instead use his inhaler medications. (*Id.* ¶ 7).

---

[6] Plaintiff disputes what Officer Frisch said to Nurse Steven. According to Plaintiff's verified complaint, the health care administrator told Plaintiff that Nurse Steven told him that Frisch never told her that there was a medical emergency—that Frisch only asked her if Plaintiff had his inhalers. (Doc. 10, ¶ 35). I do not credit this version of events because it is hearsay within hearsay. I accept Plaintiff's own sworn statements as admissible at trial. But Plaintiff's retelling of the out-of-court statements of the administrator and the even more deeply embedded out-of-court statements of the nurse are inadmissible hearsay. *Bluegrass Dutch Tr. Morehead, LLC v. Rowan Cnty. Fiscal Ct.*, 734 F. App'x 322, 327 (6th Cir. 2018). Therefore, the record is left with Defendants' unrebutted version of the phone call.

Defendants are entitled to rely on the medical conclusions and recommendations of the medical staff concerning Plaintiff's asthma condition. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018). In *Winkler*, a detainee plaintiff complained to a jail officer that he was feeling ill and needed medical treatment. *Id.* at 888. The officer in turn called the jail doctor, relaying the information the plaintiff told him. *Id.* The doctor instructed the officer to give the plaintiff his prescribed medications, and the officer did so. *Id.* Plaintiff later died of an ulcer, and his estate brought suit, claiming the officer was deliberately indifferent by failing to collect more information to advise the jail doctor adequately. *Id.* at 895. The Sixth Circuit affirmed summary judgment for the officer, reasoning that the officer was not deliberately indifferent because he responded immediately, took reasonable action, and was entitled to rely on the conclusions and advice of the doctor. *Id.*

The same is true here. The Defendants responded immediately and reasonably to Plaintiff's complaints by alerting the medical unit. Nurse Steven advised the Defendants that Plaintiff did not need a breathing treatment as Plaintiff requested. Instead, Nurse Steven instructed the Defendants to tell Plaintiff to use his inhalers.

The Defendants relied on Nurse Steven's medical conclusion and recommendation. Their doing so, and their prompt attention to Plaintiff's medical need, show that they were not deliberately indifferent as a matter of law. *See also Hogan v. Lucas*, 2020 WL 6263601, at *3 (N.D. Ohio, Oct. 23, 2020) (Polster, J.) (finding no deliberate indifference issue where officers responded to plaintiff's request for asthma treatment and followed the recommendation of medical personnel).

Therefore, Plaintiff has failed to show an issue of triable fact on the subjective element of the deliberate indifference analysis. As he has failed to show a triable issue under either prong, I grant summary judgment to Defendants Frisch, Sigler, and Craig.

### 2.  Deliberate Indifference Claim against Nurse Davis

In a separate incident, Plaintiff claims that Defendant Nurse Davis was deliberately indifferent to his serious medical need when she delayed his asthma breathing treatment by 30 minutes. I conclude Plaintiff has shown issues of triable fact on the objective prong of the analysis, but he fails to show a triable issue on the subjective prong.

#### a.  The Objective Element

On September 19, 2019, Plaintiff complained to "Officer Andrew" at the officer's desk in the prison dorm that he was having a severe asthma attack and needed a breathing treatment. Officers then took Plaintiff to the medical unit where the staff examined him and gave him a breathing treatment to alleviate his symptoms.

An objectively serious medical need is either "[1] one that has been diagnosed by a physician as mandating treatment or [2] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 567 (6th Cir. 2020). Plaintiff has established triable issues of fact regarding the diagnosis and necessity of the medical treatment on September 19, 2019.

The medical record signed by Defendant Davis notes Plaintiff's history of asthma diagnosis, but Nurse Davis did not assess Plaintiff's *current* condition as an asthma attack. Nonetheless, there is sufficient evidence for a jury to conclude that Plaintiff had a serious medical need. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Defendant Davis's medical record shows that Plaintiff complained that he was wheezing and needed a breathing treatment. (Doc. 43-1, pgID 414). It also shows that he had a cough and that the peak flow measurements of his lung capacity were lower before the breathing treatment than after. Further, Officer Andrew, the desk officer in the dorm, felt the need to call an emergency medical transport to take Plaintiff immediately to the medical unit.

These facts together make it possible for a reasonable juror to conclude that Plaintiff's symptoms and condition on this day showed an objectively serious medical need.

### b. The Subjective Element

Plaintiff must also show sufficient evidence to create a triable issue of fact on the subjective prong of the analysis. He has not done so.

Plaintiff claims Nurse Davis delayed the administration of his breathing treatment by half an hour, in violation of the Eight Amendment's prohibition of cruel and unusual punishment. (Doc. 10, ¶¶ 37–45). But the Eighth Amendment does not entitle prisoners to "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

"[T]he mere existence of delay in receiving treatment is not enough for a jury to find deliberate indifference." *Santiago v. Ringle*, 734 F.3d 585, 593 (6th Cir. 2013). Plaintiff has not shown that Nurse Davis disregarded a known risk to Plaintiff's health by not treating him sooner. The medical records show that Plaintiff's treatment began, at the very latest, at 10:20 p.m., when medical staff administered a peak flow test to measure his lung capacity. (Doc. 43-1, pgID 416). The undisputed facts thus show 20 minutes, not 30, between Plaintiff's initial request for treatment and its start.

Plaintiff neither explains nor provides facts on the constitutionally appropriate timing for the breathing treatment. I can only surmise that it must have been something between 20 minutes

and instantaneous. But this short time lapse by itself is not an issue that would warrant submission to a jury.

Plaintiff also does not show any facts that demonstrate how Nurse Davis could have provided treatment sooner but deliberately chose not to. Dr. Patrick Gray's (a staff physician at NCCC) affidavit says that in the prison setting, it often difficult "to arrange for transport to the medical unit." [CITE] Regardless, transportation "is the responsibility of the corrections officers" and not medical staff such as Nurse Davis.[7] (Doc. 40-1, ¶ 12). Plaintiff does not contest this fact.

Plaintiff has not provided sufficient facts to show Nurse Davis's deliberate disregard of his known medical risk. Plaintiff has only shown that he complained of breathing problems and was immediately taken to the medical unit, where he started receiving medical treatment within 20 minutes of his first complaint.

I therefore grant summary judgement in favor of Defendant Davis.

## Conclusion

It is, therefore,

ORDERED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 40) be, and the same hereby is, granted.

---

[7] I otherwise discount Dr. Gray's affidavit. Dr. Gray opines that Plaintiff was "treated appropriately" and that there was "no breach of care or standard of care." (Doc. 40-1, ¶¶ 7–11). Dr. Gray does not base these statements on his personal knowledge, as required by Fed. R. Civ. P. 56(c)(4). To the extent he is offering these statements as opinions under Fed. R. Evid. 702, Defendants have not disclosed Dr. Gray as an expert witness. *See* Fed. R. Civ. P. 26(a)(2) ("[A] party *must* disclose to the other parties the identity of any witness it may use at trial to present evidence under [Rule 702].") (emphasis added). Regardless, this is a constitutional case, not one for malpractice.

2. The remaining claims against Defendants James Craig, Travis Frisch, Alex Sigler, and Vicky Davis be, and the same hereby are, dismissed with prejudice.

3. I certify, under 28 U.S.C. § 1915(a)(3), that an appeal would not be taken in good faith as jurists of reason could not rationally dispute the reasoning of this Order or its result.

SO ORDERED.

/s/ *James G. Carr*
Sr. U.S. District Judge